No. 22-16795

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

_____

BRENT LINDSEY,

*Plaintiff-Appellee*,

v.

TRAVELERS COMMERCIAL INSURANCE COMPANY, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Eastern District of California
No. 2:19-cv-01855-KJM-CKD
Hon. Kimber J. Mueller

_____

APPELLANTS' OPENING BRIEF

_____

NILAN JOHNSON LEWIS PA

By: *s/ Christopher T. Ruska*
  Joel Andersen (MN352573)
  Christopher T. Ruska (MN0401745)
  250 Marquette Avenue South, Suite 800
  Minneapolis, Minnesota 55401
  Telephone: (612) 305-7500
  Fax: (612) 305-7501
  jandersen@nilanjohnson.com
  cruska@nilanjohnson.com

ATTORNEYS FOR DEFENDANTS-
APPELLANTS TRAVELERS COMMERCIAL
INSURANCE COMPANY, ET AL.

## DISCLOSURE STATEMENT

The Travelers Indemnity Company is 100% owned by Travelers Insurance Group Holdings Inc., which is 100% owned by Travelers Property Casualty Corp. Travelers Property Casualty Corp is 100% owned by The Travelers Companies, Inc., which is the only public company.

Date:  April 10, 2023

NILAN JOHNSON LEWIS PA

By: s/ Christopher T. Ruska
    Joel Andersen (MN352573)
    Christopher T. Ruska (MN0401745)
    250 Marquette Avenue South, Suite 800
    Minneapolis, Minnesota 55401
    Telephone: (612) 305-7500
    Fax: (612) 305-7501
    jandersen@nilanjohnson.com
    cruska@nilanjohnson.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS TRAVELERS COMMERCIAL INSURANCE COMPANY, ET AL.

i

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT ............................................................. i

TABLE OF AUTHORITIES ............................................................ iii

INTRODUCTION .......................................................................... 1

JURISDICTIONAL STATEMENT ..................................................... 2

STATUTORY AUTHORITIES .......................................................... 2

ISSUE PRESENTED ...................................................................... 3

STATEMENT OF THE CASE .......................................................... 4

SUMMARY OF THE ARGUMENT .................................................. 10

STANDARD OF REVIEW ............................................................. 10

ARGUMENT .............................................................................. 11

    I.    Arbitrator discretion is a key function of the FAA's purpose to provide Expedient resolutions ............................................. 11

    II.    Arbitrator Freedman's discovery ruling is not affirmative misconduct warranting vacatur ........................................... 15

        A.    Lindsey Cannot Prove the Arbitration Proceedings were Fundamentally Unfair ............................................. 19

        B.    Arbitrator Freedman's decision not to order production of other employees' wage documentation did not fundamentally prejudice Lindsey to deny him a fair hearing ........................... 23

        C.    Lindsey Cannot Prove He was Prejudiced by Arbitrator Freedman's Decision .............................................. 26

    III.    FRCP 26(b)(1) Does Not Provide a Basis for Vacatur ...................... 30

    IV.    The District Court erred in VacatING because it failed to heed the law and applicable standards of Review ............................. 32

CONCLUSION ........................................................................... 33

CERTIFICATE OF COMPLIANCE .................................................. 41

ii

# TABLE OF AUTHORITIES

**Cases**                                                                 Pages(s)

*Aerojet—Gen. Corp. v. Am. Arbitration Assoc.,*
   478 F.2d 248 (9th Cir. 1973) ................................................... 21, 22

*Aeryon Labs, Inc. v. Datron World Communications, Inc.,*
   2020 U.S. Dist. LEXIS 37459 (S.D. Cal. Mar. 4, 2020) ..................... 18, 19

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC,*
   913 F.3d 1162 (9th Cir. 2019) ................................................. 10, 13

*Bodett v. Coxcom, Inc.,*
   366 F.3d 736 (9th Cir. 2004) ...................................................... 28

*Bowles Fin. Grp. v. Stifel, Nicolaus & Co.,*
   22 F.3d 1010 (10th Cir. 1994) .................................................... 21

*Carpenters 46 N. Cal. Ctys. Conference Bd. v. Zcon Builders,*
   96 F.3d 410 (9th Cir. 1996) ............................................ 13, 19, 20

*Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.,*
   888 F.2d 260 (2d Cir. 1989) ...................................................... 15

*Century Indem. Co. v. Certain Underwriters at Lloyd's,*
   584 F.3d 513 (3d Cir. 2009) ...................................................... 17

*DeMartini v. John,*
   693 F. App'x 534 (9th Cir. 2017) ................................................ 30

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.,*
   932 F.3d 1 (1st Cir. 2019) ........................................................ 14

*Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co.,*
   933 F.2d 1481 (9th Cir. 1991) ................................................... 14

*Excel Fortress Ltd. v. Wilhelm,*
   2018 U.S. Dist. LEXIS 197737 (D. Ariz. 2018) ............................... 32

*Ficek v. S. Pac. Co.,*
   338 F.2d 655 (9th Cir. 1964) ............................................... 19, 20

*First Options, Inc. v. Kaplan,*
   514 U.S. 938 (1995) ............................................................... 10

*Folkways Music Publishers, Inc. v. Weiss,*
   989 F.2d 108 (2d Cir. 1993) ..................................................... 13

*French v. Merrill Lynch,*
    784 F.2d 902 (9th Cir. 1986) ..................................................... 30, 31

*G.C. & K.B. Invs., Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) .......................................................13

*Gibson v. King County,*
    256 F. App'x 39 (9th Cir. 2007) (unpublished) ........................... 28

*Gulf Coast Indus. Workers Union v. Exxon Co., USA,*
    70 F.3d 847 (5th Cir. 1995) ......................................................25, 33

*Hall Street Assocs., LLC v. Mattell, Inc.,*
    552 U.S. 576 (2008) ....................................................................14, 15

*Hawn v. Exec. Jet Mgmt.,*
    615 F.3d 1151 (9th Cir. 2010) ................................................... 28, 29

*Hoteles Condado Beach v. Union de Tronquistas Local 901,*
    763 F.2d 34 (1st Cir. 1985) ........................................................ 19, 33

*Loc. Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.,*
    911 F.3d 588 (9th Cir. 2018) ...........................................................10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,*
    473 U.S. 614 (1985) ........................................................................21

*Mixon v. Fair Emp't & Hous. Comm'n,*
    192 Cal.App.3d 1306 (1987) ......................................................... 28

*Move, Inc. v. Citigroup Global Markets,*
    840 F.3d 1152 (9th Cir. 2016) ....................................................... 25

*New Regency Prods., Inc., v. Nippon Herald Films, Inc.,*
    501 F.3d 1101 (9th Cir. 2007) .........................................................10

*Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,*
    397 F.2d 594 (3d Cir. 1968) ............................................................21

*Oxford Health Plans LLC v. Sutter,*
    569 U.S. 564 (2013) ...................................................................... 14

*Peraton Government Communications, Inc. v. Hawaii Pacific Teleport LP,*
    2022 U.S. App. LEXIS 23076 (9th Cir. Aug. 18, 2022) ...........................24

*Poweragent v. Elec. Data Sys. Corp.,*
    358 F.3d 1187 (9th Cir. 2004) ........................................................ 11

*Scherk v. Alberto-Culver Co.,*
    417 U.S. 506 (1974) .........................................................................12

*Schoenduve Corp. v. Lucent Techs., Inc.,*
    442 F.3d 727 (9th Cir. 2006) ................................................................ 11

*Selden v. Airbnb, Inc.,*
    4 F.4th 148 (D.C. Cir. 2021) ................................................ 26, 27, 29

*Stead Motors of Walnut Creek v. Auto Machinists Lodge,*
    886 F.2d 1200 (9th Cir. 1989) ..................................................... 10

*Sunshine Mining Co. v. United Steelworkers of Am.,*
    823 F.2d 1289 (9th Cir. 1987) ..................................................... *passim*

*Teamsters, Chauffeurs, etc. v. E.D. Clapp Corp.,*
    551 F. Supp. 570 (N.D.N.Y. 1982) .................................... 25, 26

*Tempo Shain Corp. v. Bertek, Inc.,*
    120 F.3d 16 (2d Cir. 1997) ................................................ 13, 14, 33

*U. S. Life Ins. Co. v. Superior Nat'l Ins. Co.,*
    591 F.3d 1167 (9th Cir. 2010) ..................................................... *passim*

*United Paperworkers Int'l Union v. Misco, Inc.,*
    484 U.S. 29 (1987) ...................................................... 13, 15, 16, 32

*Wise v. Wachovia Securities, LLC,*
    450 F.3d 265 (7th Cir. 2006) .................................... 17, 18, 23, 24

*Wood v. City of San Diego,*
    678 F.3d 1075 (9th Cir. 2012) ................................................ 28

**Statutes**

9 U.S.C. § 9 .................................................................. 2, 11, 30, 31

9 U.S.C. § 10(a) ........................................................................ 3, 15

9 U.S.C. § 10(a)(3) ........................................................... *passim*

California Fair Employment and Housing Act ........................ 4, 9

**Other Authorities**

Federal Rule of Appellate Procedure 4(a)(1)(A) ......................... 2

Federal Rule of Civil Procedure 30(b)(6) ................................ 22

Federal Rule of Civil Procedure 26(B)(1) ................... 30, 31, 32

H.R. Rep. No. 68-96 (1924) ......................................................... 12

Hearing on S. 4213 and S. 4214 Before a Subcomm. of the S. Comm. on
    the Judiciary, 67th Cong. 2 (1923) ...................................... 12

S. Rep. No. 68-536 (1924).............................................................................12

# INTRODUCTION

In this unremarkable arbitrable employment discrimination dispute, Appellee Brent Lindsey agreed to the arbitrator and the procedures to govern the arbitration, served written discovery requests, obtained documents, took depositions, made discovery motions, and opposed Appellants'[1] summary judgment motion. After hearing and considering Lindsey's written submissions and oral argument, the arbitrator granted Appellants summary judgment. Lindsey moved to vacate the arbitration award (the "Award"), essentially seeking in court an arbitration discovery dispute do-over. But neither the parties' arbitration agreement, nor the Federal Arbitration Act ("FAA"), nor controlling case law permit a court to vacate an arbitration award based solely on an arbitrator's run-of-the-mill discovery ruling. When parties agree to arbitrate, they give up the right to come to court complaining about discovery. This Court should uphold arbitration's purpose of resolving disputes expeditiously and economically, and reverse the district court order vacating the Award.

---

[1] Lindsey dismissed The Travelers Commercial Insurance Company and The Travelers Casualty Insurance Company of America from the arbitration, and he added The Travelers Indemnity Company, which is the proper entity in this matter. ER-116.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction to confirm or vacate the Award under sections 9 and 10 of the FAA, 9 U.S.C. §§ 9-10. This Court has jurisdiction to review de novo the district court's order vacating the Award under section 16 of the FAA, 9 U.S.C. § 16(a)(3). The district court entered on October 20, 2022, the order from which this appeal is taken. Appellants timely filed their notice of appeal on November 17, 2022. *See* Fed. R. App. P. 4(a)(1)(A).

## STATUTORY AUTHORITIES

9 U.S.C. § 9:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made. Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding. If the adverse party is a resident of the district within which the award was made, such service shall be made upon the adverse party or his attorney as prescribed by law for service of notice of motion in an action in the same court. If the adverse party shall be a nonresident, then the notice of the application shall be served by the marshal of any district within which the adverse party

may be found in like manner as other process of the court.

9 U.S.C. § 10(a):

In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

## ISSUE PRESENTED

I.   Whether Arbitrator David G. Freedman's procedural discovery and evidentiary decision adverse to Lindsey provided grounds for the district court to vacate the Award awarding Appellants summary judgment on Lindsey's employment discrimination claims that were indisputably subject to arbitration.

## STATEMENT OF THE CASE

Lindsey sued Appellants for various discrimination claims under California's Fair Employment and Housing Act ("FEHA") after he resigned his employment as an insurance claims adjustor. During his Travelers employment, Lindsey's pay nearly doubled from $44,000 to over $80,000 as a result of him receiving five separate pay increases, and he received two promotions. *See* ER-119.

Pursuant to the parties' Arbitration Agreement, Appellants compelled the dispute to arbitration. *See* ER-109-14. The parties mutually selected Arbitrator David G. Freedman to hear their dispute. Arbitrator Freedman described his experience as follows:

> Employment law practitioner for over 25 years specializing in broad range of employment issues in state and federal court and arbitration. Extensive experience representing employers and employees in claims involving wrongful termination, discrimination, harassment, retaliation, FMLA/CFRA, ADA, employment contracts, independent contractor agreements, FLSA and California wage and hour issues, trade secrets and unfair competition. Handles matters in diverse industries including hospitality, manufacturing, professional and financial services, entertainment, healthcare, design and construction.
>
> As a trial lawyer for over 37 years, has been lead counsel in more than 100 jury and bench trials in state and federal courts and arbitrations before AAA, NASD, FINRA, and NYSE, including cases involving discrimination, harassment, failure to accommodate, retaliation, FLSA, wrongful discharge, breach of contract, and fraud.

ER-11-12.

Lindsey made various disparate treatment claims based on his race, alleged disability, and national origin. ER-137-55. His Complaint asserted no alleged facts about his compensation, but it did allege in one sentence under his Failure to Promote Ninth Cause of Action that he "was denied promotions and raises, on the basis of race and national origin discrimination and on the basis that Plaintiff complained" about his alleged discrimination. ER-150. In other words, his compensation allegation was directly tied to his supposed failure to obtain promotions. Lindsey did not pursue a disparate impact theory of discrimination.

Lindsey served substantial written and document discovery. Appellants responded to scores of interrogatories and requests for production of documents, and produced over 1,300 pages of documents. Lindsey also took four depositions—Appellant Stephens, two other Travelers employees, and a deposition of Travelers as a corporation. ER-14.

In connection with the corporate deposition notice, Lindsey listed 57 separate topics. Appellants served objections and explained what the Travelers witness would and would not be prepared to testify about. *See* ER-31-64. Lindsey raised concerns with Arbitrator Freedman about some of Travelers' objections to the deposition topics, four of which are relevant here: testimony about investigations into Lindsey's allegedly not having been given various pay increases.

*See* ER-26. Travelers objected to these topics as, among other things, vague and

seeking confidential information about third parties. *See* ER 52-54. Lindsey was

not satisfied with those objections, so raised them to Arbitrator Freedman by

writing:

> Nos. 43, 44, 45, 46:  These questions ask for the reasons
> Claimant was not given raises he requested at
> performance reviews.  In eight years at working at
> Respondent's he was given only one raise which was
> basically a cost of living adjustment.  This is despite
> many emails from appreciative customers and being
> nominated year after year for the Travelers In-Sync
> award, its highest customer service award.  In talking
> with other adjusters, Claimant learned that other
> adjusters were given raises routinely and as a result were
> making much more money than he.  Claimant strongly
> suspects the reason was for these denials was racial
> discrimination. As a result, he inquires as to the basis for
> these supervisors refusing to recommend Claimant for a
> raise at his performance reviews.

ER-18-19.

Lindsey also served nine document requests in connection with the

corporate deposition notice.  The first request was: "ALL DOCUMENTS showing

pay of other adjusters in CLAIMANT'S department at during [sic] relevant

periods of their employment with RESPONDENT."  Travelers objected to the

request as vague, overly broad, beyond the scope of permissible discovery, calling

for information not relevant, and seeking confidential information about third

parties. *See* ER-28-29. Lindsey was similarly dissatisfied with Travelers' objections and asked the Arbitrator to order production. *See* ER-16-17.

On all these disputes, counsel for the parties presented their competing positions to Arbitrator Freedman. *See* ER-14, 131. Arbitrator Freedman heard those arguments, and ordered Appellants to, and Appellants did, provide a witness prepared to testify about Topic Nos. 45 and 46:

> 45. YOUR investigation into CLAIMANT's complaint of not being recommended for a raise by KEITH PEARMAN on or about April 2015 and raises in that department accorded to other adjusters at that time.

> 46. YOUR investigation into CLAIMANT's complaint of not being recommended for a raise by DENNIS SULLIVAN on or about April 2017 and raises in that department accorded to other adjusters at that time.

ER-26.[2] But Arbitrator Freedman determined the requests for other employees' compensation information was "overbroad, unduly burdensome, and seek documents on matters that are not relevant to the claims asserted."[3] *See* ER-14, 131.

---

[2] Lindsey did not fully explore these topics at the corporate deposition. He did not ask the Travelers deponent whether raises were accorded to other adjusters.

[3] Included within Arbitrator Freedman's determination was his conclusion Appellants need not have to prepare a deponent to testify on Topics 43 and 44: "YOUR investigation into CLAIMANT's complaint of not being recommended for a raise by SCOTT SUCKEY on or about April 2013 and raises in that department accorded to other adjusters at that time," and "YOUR investigation into CLAIMANT's complaint of not being recommended for a raise by LISA ANDROLINA-ARNOTT on or about April 2014 and raises in that department accorded to other adjusters at that time." ER-51-53.

7

Months later, Lindsey asked Arbitrator Freedman to reconsider his order sustaining Appellants' objections to, in relevant part, the document request regarding other employees' compensation information. ER-17. Arbitrator Freedman held a telephone conference with the parties on the matter, where he permitted the parties to present arguments on the matter. ER-14. Arbitrator Freedman explained the other employees' compensation documentation was not relevant, in part, because (1) Lindsey asserted disparate treatment claims, not disparate impact claims, so generalized comparative compensation information was not relevant; and (2) even under his disparate treatment claims, Lindsey offered no foundational facts for why any other employee's compensation was relevant. *See id.* In fact, Lindsey's primary foundational factual assertion—that "In eight years at working at Respondent's he was given only one raise which was basically a cost of living adjustment"—was indisputably false. ER-129.

Appellants requested permission to file a dispositive motion, to which Lindsey objected. ER-136. Arbitrator Freedman permitted Appellants to move for summary judgment over Lindsey's objection because the Arbitration Agreement's language permitted it, and Arbitrator Freedman set the summary judgment motion hearing date for December 23, 2020. *Id.* After the parties' summary judgment briefing was complete, and just two days before the summary judgment hearing, Lindsey filed a motion to compel regarding the same employee compensation

documentation Arbitrator Freedman had already determined need not be produced. *See* ER-132-35.

Arbitrator Freedman granted Appellants' summary judgment motion on December 30, 2020. ER-118-30. Regarding Lindsey's Failure to Promote claim (wherein Lindsey had made his compensation allegation), Arbitrator Freedman concluded:

> [T]o establish this [California Fair Employment and Housing Act] claim, claimant must prove that respondent denied him a . . . raise and that his race or national origin were substantial motivating reasons for those decisions.
>
> . . . .
>
> Claimant's salary was raised in January 2012, October 2012, March 2015, October 2015, and April 2018. His complaint does not allege and his evidence does not describe a time when he should have received a raise but did not or show any facts to support his allegation that race was ever a factor in his compensation. Claimant's subjective believe that his race was a reason he did not receive a raise in insufficient to raise a triable issue.

ER-129.

Because his ruling was not dependent upon facts about other employees' salaries, the Arbitrator denied as moot Lindsey's belated motion to compel. *See* ER-117.

## SUMMARY OF THE ARGUMENT

There is no law or contract on which Lindsey can ground his claimed right to discovery in the arbitration. The parties' Arbitration Agreement did not grant such a right; the FAA does not grant such a right; and the body of law interpreting the FAA does not grant such a right. There is nothing in the record to which Lindsey can point to prove he was denied a fundamentally fair hearing or otherwise persuade this Court it should not give the substantial deference due to Arbitrator Freedman's conducting the arbitration. This Court should therefore reverse the district court order vacating the Award.

Appellants request oral argument of 15 minutes per side to present these important issues to the Court.

## STANDARD OF REVIEW

This Court reviews de novo the district court's vacatur of an arbitration award. *First Options, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995); *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (reviewing vacatur of arbitration award); *Loc. Joint Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 595 (9th Cir. 2018) (reviewing confirmation of arbitration award); *New Regency Prods., Inc., v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1105 (9th Cir. 2007). Because arbitration is an encouraged method of dispute resolution, a federal court's "[r]eview of an arbitration award is both limited and highly deferential." *Aspic Eng'g & Constr. Co.*,

913 F.3d at 1166 (internal quotations and citation omitted); *Stead Motors of Walnut Creek v. Auto Machinists Lodge*, 886 F.2d 1200, 1209 (9th Cir. 1989) (arbitrator's award entitled to deference "even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions"); *see also Poweragent v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004); *U. S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1172 (9th Cir. 2010) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36-37 (1987); *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006). This Court reviews an arbitrator's procedural rulings—e.g., discovery and evidentiary rulings—only as to whether the arbitrator provided the party seeking vacatur a fundamentally fair hearing. *Sunshine Mining Co. v. United Steelworkers of Am.*, 823 F.2d 1289, 1295 (9th Cir. 1987).

## ARGUMENT

## I.  ARBITRATOR DISCRETION IS A KEY FUNCTION OF THE FAA'S PURPOSE TO PROVIDE EXPEDIENT RESOLUTIONS

Strong public policy favors arbitration for dispute resolution. The FAA reflects a national policy favoring arbitration, and courts are reluctant to vacate arbitration awards except in very limited circumstances. This is because parties who agree to submit their disputes to arbitration have chosen to forego their right to a judicial forum, and have agreed to be bound by the arbitrator's decision.

11

When Congress adopted the FAA, 9 U.S.C. §§ 1 *et seq.*, it was responding to concerns over the complexity, duration, delays and costs of federal court litigation, with the attendant adverse effects that unduly prolonged judicial proceedings engendered for litigants, the courts, and society in general. *See* H.R. Rep. No. 68-96, at 2 (1924). In addressing these concerns, the FAA recognized the value of arbitration properly conducted as a means by which parties could "settle their disputes expeditiously and economically." *See* Hearing on S. 4213 and S. 4214 Before a Subcomm. of the S. Comm. on the Judiciary, 67th Cong. 2 (1923). The statute contemplated a litigation alternative that would be simpler, faster and less costly for all concerned. As envisioned, this dispute resolution system would be liberated from many of the onerous demands and constraints associated with court proceedings. *See id.; see also* S. Rep. No. 68-536, at 3 (1924) (noting avoiding delays in litigation and "[t]he settlement of disputes by arbitration appeals to big business and little business alike, to corporate interests as well as to individuals"); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511 (1974) (acknowledging FAA "reflects a legislative recognition of the 'desirability of arbitration as an alternative to the complications of litigation'" (quoting *Wilko v. Swan*, 346 U.S. 427, 431 (1953))).

Judicial doctrine recognizes arbitration's immense public and private benefits. Since the FAA's inception, an extensive body of law has developed reaffirming the strong federal policy that favors honoring arbitration agreements

and ensuring that arbitration proceedings safeguard the efficiency values of expeditiousness, economy and simplicity in reaching the merits and resolving disputes. *See G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1105 (9th Cir. 2003) ("The FAA, while it does not itself create independent federal jurisdiction, 'creates a body of federal substantive law establishing and regulating' arbitration agreements that come within the FAA's purview." (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32, (1983))); *see also Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). To these ends, federal courts underscore that arbitration is not intended to, and does not, incorporate all the procedural rules and niceties that govern typical litigation in judicial proceedings. *Carpenters 46 N. Cal. Ctys. Conference Bd. v. Zcon Builders*, 96 F.3d 410, 413 (9th Cir. 1996); *see also Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (noting arbitration "need not follow all the niceties observed by the federal courts" (quotation omitted)).

This judicial attitude also underpins the extensive deference accorded to arbitration decisions on judicial review. *See Aspic Eng'g & Constr. Co.*, 913 F.3d at 1166; *see also Misco, Inc.*, 484 U.S. at 38 ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,

that a court is convinced he committed serious error does not suffice to overturn his decision."); *Tempo Shain*, 120 F.3d at 19 (arbitrators' awards "are generally accorded great deference under the FAA" and judicial review of arbitration rulings is "narrowly limited"). Judicial review of an arbitrator's decision is "extremely narrow." *Emp'rs Ins. of Wausau v. Nat'l Union Fire Ins. Co.*, 933 F.2d 1481, 1485 (9th Cir. 1991). A court can "vacate an arbitrator's decision only in very unusual circumstances. That limited judicial review . . . maintains arbitration's essential virtue of resolving disputes straightaway. If parties could take full-bore legal and evidentiary appeals, arbitration would become merely a prelude to a more cumbersome and time-consuming judicial review process." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568-69 (2013) (cleaned up). In fact, the First Circuit has observed that review is so limited it applies "even where such error is painfully clear, [because] courts are not authorized to reconsider the merits of arbitration awards." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 932 F.3d 1, 9 (1st Cir. 2019) (cleaned up) (quoting *S.D. Warren Co. v. United Paperworkers' Int'l. Union, Local 1069*, 845 F.2d 3, 7 (1st Cir. 1988)).

This deference manifests in the FAA's statutory grounds establishing a high threshold for vacating an arbitration award. Under the FAA, a court "must confirm an arbitration award unless it is vacated, modified or corrected as prescribed in §§ 10 and 11." *Hall Street Assocs., LLC v. Mattell, Inc.*, 552 U.S. 576, 582 (2008) (citations

and quotations omitted). "Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one." *Id.* The only grounds for vacating an arbitration award are, as a result, those listed in § 10. *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).

As relevant here, Section 10(a) permits vacatur only when there is evidence "the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). To meet this standard for vacating an arbitration award, "the arbitrator's refusal to hear evidence must demonstrate 'bad faith or [be] so gross as to amount to affirmative misconduct.'" *See Misco, Inc.*, 484 U.S. at 40. Lindsey, as the party seeking vacatur, bears the burden to show he is entitled to relief. *U.S. Life Ins.*, 591 F.3d at 1173.

## II.   ARBITRATOR FREEDMAN'S DISCOVERY RULING IS NOT AFFIRMATIVE MISCONDUCT WARRANTING VACATUR

The FAA § 10(a)(3) is meant to apply only to cases when an arbitrator, to a party's prejudice, rejects consideration of relevant evidence essential to the adjudication of a fundamental issue in dispute, and the party would otherwise be deprived of sufficient opportunity to present proof of a claim or defense. *See Sunshine Mining Co.*, 823 F.2d at 1295. Such rejection amounts to a denial of fundamental fairness in the proceeding, and renders the resulting arbitral decision biased, irrational or arbitrary. *Id.*; *see also Carte Blanche (Singapore) Pte., Ltd. v. Carte*

15

*Blanche Int'l, Ltd.*, 888 F.2d 260, 264-65 (2d Cir. 1989) ("In Section 10, the Act permits review for evidence of 'corruption, fraud, undue means, evident partiality or corruption in the arbitrators, specified misconduct or misbehavior on their part,' or 'where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.'" (cleaned up)).

The record contains no evidence of Arbitrator Freedman affirmatively committing misconduct. He did not deprive Lindsey of an adequate opportunity to present his side. Appellants produced over 1,300 pages of documents in response to Lindsey's requests. When Lindsey sought Arbitrator Freedman's intervention after Appellant objected to the production of other employees' pay information, Arbitrator Freedman provided Lindsey an opportunity to be heard by permitting written and oral arguments on the issue. Arbitrator Freedman granted Lindsey some of his requested relief, and Lindsey was able to depose both Appellants and two additional Travelers witnesses. Lindsey later opposed summary judgment, and argued that opposition to the Arbitrator.

The great weight of authority makes clear an arbitrator's discovery and evidentiary rulings are virtually unassailable, particularly when—as here—parties had the opportunity to be heard before the ruling. *See Misco, Inc.*, 484 U.S. at 40 (determining an arbitrator's decision on discovery disputes in an arbitration is a

procedural question which grows out of the dispute and bears on its final disposition). To permit vacatur because of a run-of-the-mill disagreement on a discovery decision seen in this case amounts to a disregard of the principles underlying the FAA's creation and the developed case law that followed. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 557 (3d Cir. 2009) ("Section 10(a)(3) cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." (quotation omitted)). As the Third Circuit observed, "even district courts sometimes reject evidence that they should admit and yet such erroneous rulings hardly can be characterized as 'misconduct.'" *Id.* Moreover, due to the deference given to arbitration awards, a court's review of those awards is different than appellate review of decisions in the judicial system. *Id.* ("[A] a court reviewing an arbitrator's decision to reject evidence might uphold an award even if an appellate court when reviewing a trial court's erroneous rejection of the evidence in similar circumstances might not find that the error was harmless.").

Many court decisions highlight these principles. For example, what might be the limit of arbitrator deference is seen in *Wise v. Wachovia Securities, LLC*, 450 F.3d 265 (7th Cir. 2006), where the Seventh Circuit applied the standard for arbitrator misconduct relating to the exclusion of evidence. Clients of an investment firm were involved in an arbitration against the firm based on an

allegation that their investment advisor embezzled their money through a sham investment. *Id.* at 267-68. During arbitration, the firm moved for summary judgment without submitting any evidence. *Id.* at 268. The arbitrators granted the motion without explanation. *Id.* In an action to vacate the award, the district court refused relief and the Seventh Circuit affirmed. *Id.* at 266, 270. The court explained that freedom of contract and party agreement were at the core of the arbitral process and the judicial supervision of the process. *See id.* at 269. A court may reverse arbitral determinations only when those determinations exhibit unconsented-to arbitrator misconduct:

> It is tempting to think that courts are engaged in judicial review of arbitration awards under the [FAA], but they are not …. When parties agree to arbitrate their disputes they opt out of the court system, and when one of them challenges the resulting arbitration award he per force does so not on the ground that the arbitrators made a mistake but that they violated the agreement to arbitrate, as by corruption, evident partiality, exceeding their powers, etc.—conduct to which the parties did not consent when they included an arbitration clause in their contract.

*Id.*

Also persuasive is a recent district court denial of a vacatur motion involving an arbitrator's discovery ruling. In *Aeryon Labs, Inc. v. Datron World Communications, Inc.*, 2020 U.S. Dist. LEXIS 37459, at *13-14 (S.D. Cal. Mar. 4, 2020), the court relied on Ninth Circuit and Supreme Court precedent to conclude that when

18

parties engage in discovery and an arbitrator considers the requests, the arbitrator's refusal to order disclosure of certain documents does not deprive the party "of an adequate opportunity to present its evidence and arguments" nor does it demonstrate "bad faith" or "affirmative misconduct." *Id.*

Here, the parties engaged in discovery, and Lindsey requested other employees' compensation information, which was irrelevant to Lindsey's claims and untethered to any foundational facts. Arbitrator Freedman considered Lindsey's requests, refused to order the production, and explained his reasoning. Lindsey has not met his burden of showing Arbitrator Freedman engaged in affirmative misconduct or acted in bad faith to justify vacating the Award under Section 10 (a)(3) of the FAA.

## A. Lindsey Cannot Prove the Arbitration Proceedings were Fundamentally Unfair

Although arbitrations need not include the same procedural mechanisms as judicial proceedings and deference must be given to an arbitrator's decisions concerning procedural issues, courts recognize that in extremely limited circumstances a party to an arbitration can be deprived of procedural protections that make the arbitration fundamentally unfair. *See Sunshine Mining Co.*, 823 F.2d at 1295; *Carpenters 46*, 96 F.3d at 413(collecting cases); *see also, e.g., Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964); *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir. 1985) ("Vacatur is appropriate only when the exclusion of

relevant evidence 'so affects the rights of a party that it may be said that he was deprived of a fair hearing.'" (citation omitted)).

The procedural deficiencies that could create a fundamentally unfair arbitration must go to the heart of the arbitration process—i.e., lack of notice, foreclosure on offering evidence, or a biased arbitrator. Thus, an arbitration is fundamentally fair if it meets "the minimal requirements of fairness"—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. *Ficek*, 338 F.2d at 657.

This standard accounts for the fact an arbitrator enjoys wide discretion in his or her procedural discovery and evidentiary rulings, particularly when, as here, the agreement giving rise to the arbitration grants the arbitrator extensive authority. *See Carpenters 46*, 96 F.3d at 413 (observing deference must be given to an arbitrator's decisions concerning procedural issues).

- For example, an arbitrator may admit and rely on evidence inadmissible under the Federal Rules of Evidence and still provide a fundamentally fair hearing. *See Bell Aerospace Co.*, 500 F.2d at 923; *cf. Sunshine Mining*, 823 F.2d at 1295 (stating part of arbitrator's job is to determine weight, relevancy, and authenticity of any evidence).

20

- Conversely, an arbitrator can admit evidence that would be unduly prejudicial in court and still provide a fundamentally fair hearing. *See Bowles Fin. Grp. v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1013 (10th Cir. 1994).

- An arbitrator can even prohibit a party from cross-examining a witness, because a party does not have an absolute cross-examination right in arbitration. *See Sunshine Mining*, 823 F.2d at 1295.

All that is required is that the arbitrator give each of the parties an adequate (not necessarily perfect) opportunity to present its evidence and arguments. *Id.* at 39.

These examples stem directly from the premise that parties to an arbitration have agreed to "trade[] the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985). Thus, because a basic purpose of arbitration is the speedy disposition of disputes without expense and delay of extended court proceedings, *Aerojet—Gen. Corp. v. Am. Arbitration Assoc.*, 478 F.2d 248, 251 (9th Cir. 1973), Section 10(a)(3) "cannot be read . . . to intend that every failure to receive relevant evidence constitutes misconduct . . . require[ing] the vacation of an arbitrator's award," *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968). The alternative essentially

would permit appeals of an arbitrator's interlocutory rulings, obviously frustrating arbitration's purpose. *Aerojet-Gen. Corp.*, 478 F.2d at 251.

The arbitration provided Lindsey every facet of a fundamentally fair hearing. Lindsey had notice of the arbitration. He engaged in selecting the unbiased arbitrator. Through experienced counsel, he participated in every aspect of the arbitration process, from complaint to summary judgment. He submitted a complaint setting forth his factual allegations and legal claims. He served voluminous written discovery requests. He obtained documents. He took individual depositions. He took a corporate deposition, corresponding to Federal Rule of Civil Procedure Rule 30(b)(6), with the opportunity to obtain corporate testimony on nearly fifty separate topics. He made discovery motions. He submitted written opposition to summary judgment.

In response, Arbitrator Freedman promptly addressed all issues that came before him. He heard Lindsey's discovery motion arguments, and issued separate oral and written rulings explaining his reasoning. ER-14-131. Arbitrator Freedman heard Lindsey's opposition to Appellants' summary judgment, and issued a ruling explaining his reasoning. Lindsey has not once accused Arbitrator Freedman of impartiality—nor could Lindsey because there is nothing in the record to support the charge. In short, Arbitrator Freedman provided Lindsey fundamental fairness in all aspects of the arbitration.

22

**B.  Arbitrator Freedman's Decision Not to Order Production of Other Employees' Wage Documentation Did Not Fundamentally Prejudice Lindsey to Deny Him a Fair Hearing**

What remains is for Lindsey to prove Arbitrator Freedman's refusal to order production of other employee wage documentation was an error so fundamentally prejudicial to constitute misconduct that affected Lindsey's rights so substantially to deprive him of a fair hearing. Several decisions illustrate why Lindsey's complaints come nowhere close to meeting this standard.

To begin, and as previewed earlier, an arbitrator can grant summary judgment without the moving party even submitting evidence and still have provided a fundamentally fair hearing. *See Wise*, 450 F.3d at 268-69.

Further, this Court affirmed an arbitration award in *United States Life Ins. Co.* even when the Court observed the process was "unusual" because there was no arbitrator misconduct. 591 F.3d at 1170. The arbitration panel held an ex parte meeting with panel-retained workers' compensation experts, and the arbitration panel refused the parties an opportunity to participate in or question the neutral experts about the ex parte meeting. *Id.* at 1174. The parties then submitted correspondence to the panel, which then permitted the parties opportunity to critique the reviewers' conclusions. *Id.* at 1175. The Court concluded that "perhaps U.S. Life did not enjoy a perfect hearing," it nonetheless received a fair one because

the ex parte meeting and subsequent meeting did not constitute arbitrator misbehavior. *Id.* at 1177.

An arbitration also is not fundamentally unfair even when a party is not permitted to depose an opposing party's designated company representative. This Court's unpublished decision in *Peraton Government Communications, Inc. v. Hawaii Pacific Teleport LP*, 2022 U.S. App. LEXIS 23076, at*8 (9th Cir. Aug. 18, 2022), is persuasive in its similarity with the present appeal. The appellant made the same argument as does Lindsey, asserting the award should be vacated under Section 10(a)(3) because the arbitrator did not allow the appellant to conduct certain discovery. The arbitrator in *Peraton* authorized discovery, but denied the appellant leave to depose designated representatives of the appellee, holding the appellant failed to demonstrate good cause for the requested order granting leave to take the depositions, and sustained the appellee's objections to the production of certain documents. *Id.* at *8-9. This Court concluded the arbitrator did not engage in any misconduct because an arbitrator has "wide discretion to require the exchange of evidence, and to admit or exclude evidence." *Id.* at *9 (quoting *U.S. Life Ins. Co.*, 591 F.3d at 1175).

Unlike the examples in *Wise*, *U.S. Life Ins. Co.*, and *Peraton*, courts have found a party was not provided a fundamentally fair hearing when the arbitrator committed some affirmative misbehavior, like falsifying credentials, misleading a

24

party, or prematurely closing a hearing. In *Move, Inc. v. Citigroup Global Markets*, the parties were negotiating over the composition of the arbitrator panel, where Move believed it critical the chairperson be an attorney with the requisite experience to understand and interpret sophisticated legal concepts in a complex securities claim. 840 F.3d 1152, 1158-59 (9th Cir. 2016). The chairperson Move had chosen falsified his credentials that he was an experienced attorney. *Id.* at 1155, 1159. This Court concluded "that Move was deprived of a fundamentally fair hearing and therefore was prejudiced by the fraudulent conduct of the panel's chairperson" and, therefore, was entitled to vacatur under Section 10(a)(3). *Id.* at 1159.

Similarly, the Fifth Circuit found arbitral misconduct when the arbitrator misled a party into believing evidence was admitted, but then ruled against the party because it failed to present evidence on the very point to which the excluded evidence was central. *Gulf Coast Indus. Workers Union v. Exxon Co., USA*, 70 F.3d 847, 850 (5th Cir. 1995).

And for an example of an instance when a party was actually deprived a fundamentally fair hearing because of an inability to present evidence, this Court has looked to *Teamsters, Chauffeurs, etc. v. E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982). *See U.S. Life Ins. Co.*, 591 F.3d at 1175. In *Teamsters*, one of the arbitration hearings ended abruptly, and one of the parties was not given the opportunity to complete its presentation of proof regarding the arbitrability and/or merits of the

grievances then under consideration before the arbitrator submitted his award. *Teamsters*, 551 F. Supp. at 575, 577-78. The court concluded the arbitrator's actions violated what is now Section 10(a)(3) for his refusal to hear evidence pertinent and material to the controversy. *Id.* at 578.

By looking at those few exceptional circumstances when courts determined a fundamentally fair hearing did not occur, it is clear Lindsey's disagreement over a discovery ruling does not constitute anything close to such egregious arbitral misconduct requiring vacatur, such as arbitral deception or a party's actual inability to present its case. This Court should therefore conclude Arbitrator Freedman treated Lindsey with fundamental fairness.

## C. Lindsey Cannot Prove He was Prejudiced by Arbitrator Freedman's Discovery Decision

Lindsey also cannot prove his inability to obtain other employees' wage documentation prejudiced him, which constitutes a separate and independent reason vacatur is improper. *See U.S. Life Ins. Co.*, 591 F.3d at 1176; *see also Selden v. Airbnb, Inc.*, 4 F.4th 148, 160 (D.C. Cir. 2021) ("A party seeking the vacatur of an arbitration award must establish that (1) the arbitrator committed some error, and (2) the error made a difference."). *Selden* illustrates how Lindsey was not prejudiced, and because the circumstances in *Selden* are strikingly similar, this Court should arrive at the same conclusion as the D.C. Circuit.

Selden sought vacatur, alleging arbitrator misconduct in refusing to hear evidence pertinent and material to the controversy under 9 U.S.C. § 10(a)(3). *Selden*, 4 F.4th at 160-61. Like Lindsey, Selden alleged the arbitrator improperly ruled against Selden on a discovery matter, refusing to allow serving of interrogatories or taking of depositions and by refusing to consider an expert report. *Id.* at 161. Also like Lindsey, Selden argued the discovery was "critical to a discrimination plaintiff and that their absence 'precluded him from fully prosecuting the merits of his claim' because Selden contended the discovery would show the "discriminatory impact against protected class members." *Id.*

The court rejected Selden's argument because he failed to connect how any of the evidence he might have obtained would have contradicted the arbitrator's legal conclusion. *Id.* Because of this and the vagueness of Selden's arguments, the court determined the evidence's exclusion caused him little if any prejudice. *Id.* The same is true here. Lindsey sought to rely on overbroad, unduly burdensome, and vaguely drafted document requests to obtain evidence he claimed existed, then advanced unconvincing arguments to Arbitrator Freedman about why he needed the evidence. Arbitrator Freedman concluded the requested evidence would not have made a difference, and he was right.

The lack of prejudice stems largely from the context of Lindsey's request—a failure-to-promote disparate treatment claim, and not a disparate impact of wages

claim. Lindsey's complaint does not allege and his evidence does not describe a time when he should have received a raise but did not, nor did Lindsey present any facts to support his allegation that race was ever a factor in his compensation (which nearly doubled during his Travelers tenure).

In a disparate treatment claim under FEHA, an employee is alleging that he has been treated differently from other employees in the same or similar circumstances, based on a protected characteristic such as race, gender, or age. *See Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012); *Mixon v. Fair Emp't & Hous. Comm'n*, 192 Cal.App.3d 1306, 1316-17, (1987) (holding disparate treatment claims under Title VII and the FEHA are analyzed under the same rules). In such a claim, the relevant comparison is between the treatment of the employee bringing the claim and other employees who are similarly situated with respect to the job or promotion in question. *See Hawn v. Exec. Jet Mgmt.*, 615 F.3d 1151, 1157 (9th Cir. 2010).

Other employee wages are irrelevant in a disparate treatment claim because they do not speak to the issue of whether the employee bringing the claim has been subjected to discriminatory treatment. *See Bodett v. Coxcom, Inc.*, 366 F.3d 736, 743 (9th Cir. 2004); *see also Gibson v. King County*, 256 F. App'x 39, 40 n.1 (9th Cir. 2007) (unpublished) (observing liability inquiry focuses on employer's motives in not promoting employee). In other words, just because other employees may have been paid more or less than the employee asserting the claim does not necessarily

28

mean the employee's treatment was discriminatory. The focus of a disparate treatment claim is on whether the employer treated the employee differently from other similarly situated employees based on a protected characteristic, not on whether other employees were treated differently from each other. *See Hawn v.* 615 F.3d at 1157. Therefore, evidence of other employee wages may not be relevant to the central issue in a disparate treatment claim.[4]

In light of the foregoing, Arbitrator Freedman concluded Lindsey's discovery request was impermissibly overbroad and the documents being sought were irrelevant to Lindsey's disparate treatment claim.[5] ER-14. Like *Selden*, Lindsey failed to connect how any of the evidence he might have obtained would have contradicted Arbitrator Freedman's legal conclusion, and, therefore, Lindsey has

---

[4] On the other hand, it is conceivable evidence of other employee wages may be relevant to a disparate *impact* claim, where the focus is on the impact of an employer's policies or practices on a particular group of employees, rather than on individual instances of discriminatory treatment. In such cases, evidence of other employee wages could be used to show that an employer's pay practices have a disparate impact on certain protected groups.

[5] Even assuming the request for other employees' salaries could relate to Lindsey's disparate treatment failure-to-promote claim, he assumes the evidence would have shown Lindsey in fact was being paid less than other similarly situated employees. No foundational facts support this speculation. This is a key distinction in cases where courts have concluded an arbitrator's failure to consider a key piece of evidence prejudiced a party. Lindsey never introduced any evidence to support his hearsay speculation from some unnamed individuals who purportedly told him he was being underpaid, despite having the opportunity to depose Travelers about "raises . . . accorded to other adjusters". ER-25, 131.

not been prejudiced. And even if Arbitrator Freedman's legal conclusion was erroneous (it was not), that in and of itself is still insufficient grounds for vacatur. *See French v. Merrill Lynch*, 784 F.2d 902, 906 (9th Cir. 1986).

## III.   FRCP 26(B)(1) DOES NOT PROVIDE A BASIS FOR VACATUR

Lindsey might argue, like he did to the district court, he was somehow entitled to other employees' compensation documentation pursuant to Federal Rule of Civil Procedure 26(b)(1). While this is not a ground for vacatur, Lindsey seemed to argue Arbitrator Freedman showed a manifest disregard of law when he refused to compel responses to the discovery request. In order to establish manifest disregard, "[i]t must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *DeMartini v. John*, 693 F. App'x 534, 536 (9th Cir. 2017) (quoting *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010)). Moreover, "mere allegations of error are insufficient." *Id.* (quoting *Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004)). As explained previously, the scope of a confirmation proceeding is extremely limited. Section 9 states that a district court "*must* grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9. (emphasis added). Confirmation of an arbitration award is required even in the face of legal error. "It is not even enough that the [arbitrator] may have failed to understand or apply the law. An arbitrator's decision must be

upheld unless it is completely irrational or it constitutes a manifest disregard of the law." *French v. Merrill Lynch*, 784 F.2d 902, 906 (9th Cir. 1986) (citations and internal quotations omitted); *Todd Shipyards*, 943 F.2d at 1060 (following *French*).

Lindsey's prior reliance on FRCP 26(b)(1) is flawed for several independent reasons. First, Arbitrator Freedman was not required to follow the federal rules of procedure or evidence. The parties contracted vis-à-vis the Arbitration Agreement to application of AAA rules, that "conformity to legal rules of evidence shall not be necessary," and Arbitrator Freedman would be the sole "judge of the relevance and materiality of the evidence offered." ER-113. Lindsey cannot claim error from Arbitrator Freedman not following procedural or evidence rules that Lindsey contractually agreed did not apply.

Lindsey also provides no evidence Arbitrator Freedman was aware of any law requiring the disclosure of compensation documentation for all Caucasian claim adjusters, including Rule 26(b)(1), and disregarded it. Lindsey cited no case law in briefing to Arbitrator Freedman on this assertion (because there is none). ER-16-19. Furthermore, Rule 26(b)(1) provides that parties may obtain discovery of information "that is *relevant t*o any party's claim or defense." (emphasis added). Here, Arbitrator Freedman properly concluded this information was not relevant to Lindsey's claims. Arbitrator Freedman was also not required to re-write objectionable discovery requests to make them salvageable. *See generally Excel*

31

*Fortress Ltd. v. Wilhelm*, 2018 U.S. Dist. LEXIS 197737, at *7-8 (D. Ariz. 2018) ("[I]t is not the province of the Court to rewrite discovery requests that seek irrelevant information, are overbroad, or are otherwise improper."). Arbitrator Freedman's ruling did not manifestly disregard the law but correctly applied it.

## IV.  THE DISTRICT COURT ERRED IN VACATING BECAUSE IT FAILED TO HEED THE LAW AND APPLICABLE STANDARDS OF REVIEW

While this Court's review is de novo, Appellants note the district court failed to apply the proper standards when analyzing Lindsey's motion to vacate the Award. The district court did not give the discretion it was mandated to give Arbitrator Freedman's procedural discovery and evidentiary decision. Instead, in coming to its conclusion Lindsey was deprived a fundamentally fair hearing, the district court instead impermissibly re-weighed facts and evidence and necessarily got into the merits of the case. *See Misco, Inc.*, 484 U.S. 29, 38 (1987). There is no other explanation for how the district court could have determined the evidence Lindsey was precluded from seeking prejudiced his case.

Compounding these errors, the district court relied on inapposite cases. ER-6-7. Unlike in the district court's cited decisions *Gulf Coast*, *Hoteles Condado Beach*, and *Tempo Shain Corp.*, the evidence Lindsey sought did not relate to his disparate treatment claim, nor were there foundational facts to support Lindsey's notion that his requested evidence contained information that would have materially

32

impacted his case. To the extent this Court considers the district court's decision on the Court's de novo review, it should find it erroneous for the foregoing reasons.

## CONCLUSION

Lindsey had a full and fair opportunity to present in arbitration his side of this employment dispute, and he lost. He cannot now use the federal court system as a discovery do-over. This Court cannot and should not second-guess Arbitrator Freedman's procedural discovery ruling. Lindsey's motion should be denied, and this Court should therefore reverse the district court's order vacating the Award, and in doing so should order the district court to confirm the Award.

Date: April 10, 2023

NILAN JOHNSON LEWIS PA

By: s/ Christopher T. Ruska
    Joel Andersen (MN352573)
    Christopher T. Ruska (MN0401745)
    250 Marquette Avenue South, Suite 800
    Minneapolis, Minnesota 55401
    Telephone: (612) 305-7500
    Fax: (612) 305-7501
    jandersen@nilanjohnson.com
    cruska@nilanjohnson.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS TRAVELERS COMMERCIAL INSURANCE COMPANY, ET AL.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** No. 22-16795

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** /s Christopher T. Ruska          **Date**: April 10, 2023
*(use "*s/[typed name]*" to sign electronically filed documents)*

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form08instructions.pdf](http://www.ca9.uscourts.gov/forms/form08instructions.pdf)

**9th Cir. Case Number(s)** _No. 22-16795

I am the attorney or self-represented party.

**This brief contains 7,576 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/Christopher T. Ruska_      **Date:** April 10, 2023